# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION, COLUMBUS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* **[UNDER SEAL]** | : | Civil Action No. 2:10-cv-1028 JDH/EPD |
| | : | |
| | : | |
| Plaintiff and Relator, | : | **Filed Under Seal** Pursuant to<br>**Statute 31 U.S.C. 3730(b)(2), and**<br>**Local Rule 3.2** |
| v. | : | |
| | : | **DO NOT SERVE**<br>**DO NOT PUT ON PACER** |
| **[UNDER SEAL]** | : | |
| Defendants. | : | |

## COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT



# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION, COLUMBUS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* RYAN PARKER<br>c/o Morgan Verkamp, LLC<br>700 Walnut Street<br>Cincinnati, Ohio 45202 | : <br> : <br> : <br> : <br> : | |
| Plaintiff and Relator, | : <br> : <br> : | **Filed Under Seal Pursuant to**<br>**31 U.S.C. 3730(b)(2), and**<br>**Local Rule 3.2** |
| v. | : <br> : <br> : | |
| TESTECH, INC.<br>8534 Yankee Street<br>Dayton, Ohio 45458-1833 | : <br> : <br> : <br> : | Civil Action No. 2:10-cv-1028 JDH/EPD<br>_____ |
| and | : <br> : | **DO NOT SERVE** |
| CESO, INC.<br>8534 Yankee Street<br>Dayton, Ohio 45458-1833 | : <br> : <br> : <br> : | **DO NOT PUT ON PACER** |
| and | : <br> : | |
| CESO INTERNATIONAL, LLC<br>8534 Yankee Street<br>Dayton, Ohio 45458-1833 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| CESO TESTING TECHNOLOGY, INC.<br>8534 Yankee Street<br>Dayton, Ohio 45458-1833 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| DAVID OAKES<br>8534 Yankee Street<br>Dayton, Ohio 45458-1833 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| SHERY OAKES,<br>8534 Yankee Street | : <br> : | |

Dayton, Ohio  45458-1833                    :
                                            :
                and                         :
                                            :
SHERIF AZIZ                                 :
8534 Yankee Street                          :
Dayton, Ohio  45458-1833,                   :
                                            :
                Defendants.                 :

## COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT

### I.    INTRODUCTION

1.    Relator Ryan Parker, brings this action on his own behalf and on behalf of

the United States of America to recover damages and penalties under the False Claims

Act, 31 U.S.C. § 3729 *et seq.,* against TesTech, Inc., Sherif Aziz, David Oakes, Shery

Oakes, and a number of businesses owned by Shery and David Oakes (collectively

"Defendants").  The violations arise out of false claims for payments in connection with

federal contracts awarded to TesTech, Inc., in Kentucky, Indiana, Michigan and Ohio

based on defendants' illegally representing that TesTech was qualified to obtain

contracts as a Disadvantaged Business Entity from in or before 2002 to in or after July

2009.

### II.   JURISDICTION AND VENUE

2.    This Court has subject-matter jurisdiction pursuant to 31 U.S.C. § 3732(a)

and 28 U.S.C. § 1331.

3.    Venue is proper in this District under 28 U.S.C. § 1391, as Defendants

TesTech, Inc. and the other named businesses are headquartered and do business in

the Southern district of Ohio.  Additionally, the human defendants (Sherif Aziz, David

Oakes, and Shery Oakes), reside in the Southern District of Ohio.

4.     Defendants submit their claims for payments on at least some of the
contracts in connection with which they have submitted false claims to the Ohio
Department of Transportation in Columbus, Ohio.  Many of the acts giving rise to liability
therefore occurred in the Eastern Division of this Court.

5.     The facts and circumstances of the False Claims Act violations alleged in
this complaint have not been publicly disclosed in a criminal, civil or administrative
hearing, nor in any congressional, administrative, or government accounting office
report, hearing, audit investigation, or in the news media.

6.     Relator is an original source of the information upon which this complaint
is based, as that term is used in the False Claims Act.

7.     Relator disclosed the allegations of this complaint to the United States
prior to its filing.

## III.     PARTIES

### A.     <u>Plaintiffs</u>

8.     The real party in interest to the claims set forth herein is the United States
of America.

9.     Relator Ryan Parker lives in Dayton, Ohio.  He has worked in the fields of
construction, construction inspection, and civil and environmental surveying since 1996.

10.     From 1996 to 2005, Mr. Parker was employed at defendant CESO, Inc.
(an engineering firm) as their Operations Manager; then at defendant CESO Testing
Technology, Inc. (a land surveying firm) as their Director of Operations.  Both

businesses are owned by Shery and David Oakes, share office headquarters and a website, and are commonly referred to as one company.

11.    In 2005, Shery and David Oakes transferred Mr. Parker to TesTech, Inc. (hereinafter "TesTech") which was created in 1997, and owned by Shery and David Oakes until July 2009 when they sold it to Sherif Aziz to cover up the fraud described herein.

12.    At various times, Mr. Parker acted as TesTech's Director of Operations, Vice President and Corporate Secretary until he was terminated by Sherif Aziz on October 3, 2009 for objecting to the continuation of the fraud schemes described herein.

13.    Shortly after his termination from TesTech, Mr. Parker was hired by Shery Oakes to serve as President of DHDC, Inc., a firm specializing in surveying and geotechnical and environmental inspection services, which Shery and David Oakes incorporated in 1997 and own.

14.    Although Mr. Parker did not begin working for TesTech until 2005, he was employed by Shery and David Oakes since 1996 and has knowledge about TesTech's formation and business practices.  Before being transferred to TesTech, Mr. Parker worked on various TesTech projects.

**B.    Defendants**

15.    Defendant TesTech is an engineering firm specializing in geotechnical, environmental, survey, construction and laboratory services. TesTech was incorporated in Ohio on February 3, 1997.  Its main office headquarters or principle place of

business[1] is located at 8534 Yankee Street, Dayton, Ohio 45458. TesTech has satellite offices in Columbus and Cincinnati, Ohio; Detroit and Lansing, Michigan; Indianapolis, Indiana; and Louisville, Kentucky.

16.    Defendant CESO Testing Technology, Inc., is an Ohio corporation formed on December 9, 1993, and is owned by David and Shery Oakes.

17.    Defendant CESO, Inc., is an Ohio corporation formed on April 24, 2002, and is owned by David and Shery Oakes.

18.    Defendant CESO International, LLC is an Ohio corporation formed on October 11, 2005, and is owned by David and Shery Oakes.

19.    David and Shery Oakes, husband and wife, are Ohio residents. They own several development, construction, land survey and inspection businesses, some of which are in this complaint. Their businesses are collectively referred to as "Oakes Companies" or "Oakes Co." Several of these businesses, including the corporate Defendants, are headquartered at 8534 Yankee Street, Dayton, Ohio 45458, co-located with TesTech.

20.    Until July 2009, Shery and David Oakes were the true owners of TesTech, notwithstanding the sham transfer of ownership to Sherif Aziz. The supposed corporate division between Shery and David Oakes and Mr. Aziz was a legal fiction.

21.    Sherif Aziz resides in Dayton, Ohio. He is of Egyptian descent and is

---

[1] Plaintiff's use of the term "headquarters" is interchangeable with the term "Principle place of business," which is legally defined by the Department of Transportation as: "the business location where the individuals who manage the firm's day-to-day operations spend most working hours and where top management's business records are kept." 40 C.F.R. § 26.5.

related to Shery Oakes by marriage. From 1997 to July 2009, Shery and David Oakes and Mr. Aziz falsely represented in corporate filings and applications that Mr. Aziz owned TesTech, first to qualify as a Minority Owned Business in Ohio in approximately 1998, and to become a certified as a Disadvantaged Business Entity by Ohio's Department of Transportation in approximately 2002. TesTech's certification as a Disadvantaged Business Entity in Ohio served as the basis for its certification in several other states.

22. Prior to becoming the sham owner of TesTech, Aziz worked in at CESO, Inc. as a design engineer for housing subdivisions.

23. Aziz is also a partner in several of Shery and David Oakes's development ventures and owner of XYZ Corporation, which is upon information and belief, a foreign corporation.

## IV. RULE 9(b), Fed. R. Civ. P. ALLEGATIONS

20. Much of the documentary evidence necessary to prove the allegations contained herein is in the exclusive possession of the Defendants, the United States or individual States.

21. The allegations of facts in this Complaint are personally known to Relator unless identified as being made upon information and belief. Each allegation made on information and belief identifies a situation in which Relator has, based upon his knowledge and experience, a reasoned factual basis to make the allegation, but lacks complete details.

## V. THE DEPARTMENT OF TRANSPORTATION'S DISADVANTAGED BUSINESS ENTITY ("DBE") PROGRAM REGULATORY BACKGROUND

### A. <u>Purpose and Structure of the DBE Program</u>

22.    The United States Department of Transportation (hereinafter "USDOT") distributes substantial funds each year to finance state and local construction, and public transit, and airport agency projects.  Recipients of these funds are primarily state highway, transit and airport agencies.

23.    Recipients of Federal Highway Funds, Federal Transit Funds and Federal Airport Funds (collectively "DOT funds")  are required by statute to expend at least 10% of the DOT funds they receive with "small business concerns owned and controlled by socially and economically disadvantaged individuals"—commonly referred to as "Disadvantaged Business Entities" (hereinafter "DBEs").  Safe, Accountable, Flexible, Efficient Transportation Equity Act, 23 U.S.C. § 101; 49 C.F.R §§ 26.3, 26.21.

24.    The objectives of the DBE program are:

    (a)    To ensure nondiscrimination in the award and administration of DOT-assisted contracts in the Department's highway, transit, and airport financial assistance programs;

    (b)    To create a level playing field in which DBEs can compete fairly for DOT-assisted contracts;

    (c)    To ensure that the Department's DBE program is narrowly tailored in accordance with applicable law;

    (d)    To ensure that only firms that fully meet this part's eligibility standards are permitted to participate as DBEs;

    (e)    To help remove barriers to the participation of DBEs in DOT-assisted contracts;

    (f)    To assist the development of firms that can compete successfully in

-7-

the marketplace outside the DBE program; and

(g)   To provide appropriate flexibility to recipients of Federal financial assistance in establishing and providing opportunities to DBEs.

49 C.F.R. § 26.1(a-g).

25.   Recipients of DOT funds must develop and implement a DBE program that conforms to DOT standards set forth in 49 C.F.R. Part 23 (for airport concessionaires) and 49 C.F.R. Part 26.

26.   To participate in a DBE program, a small business owned and controlled by socially and economically disadvantaged individuals must certify that they are eligible for DBE status pursuant to the certification standards of 49 C.F.R. Part 26.  49 C.F.R. § 26.61.

27.   As described by USDOT, "[t]he integrity of DOT's [DBE] program depends to a large extent upon the establishment of systematic procedures to ensure that only bona fide small disadvantaged business firms are certified to participate in DOT federally assisted programs." http://www.dotcr.ost.dot.gov/asp/dbe.asp.

28.   Thus, in order to become certified as a DBE, entities are required to participate in DOT's Unified Certification Program (UCP), administered by each state. 49 C.F.R. § 26.81(a).  Under this program, primary responsibility for enforcing the certification standards in Part 26 is delegated to each state,

29.   In Ohio, the UCP program is administered by the Ohio Department of Transportation.

30.   DBE certification will by recognized by all DOT fund recipients in that state.  49 C.F.R. § 26.81(b)(2).

31.     DBE certification from one state may be honored by DOT fund recipients in any other state. 49 C.F.R. § 26.81(e-f).

32.     DBE certification is valid for a period of at least three years, unless its certification is removed.  49 C.F.R. § 26.87.

33.     Recipients of DOT funds agree to abide by the regulations set forth 49 C.F.R. Part 26 in dispersing funds to DBEs through awards of contract and subcontract work, to remain eligible to receive federal funds. 49 C.F.R. § 26.13.

34.     Indeed, each DOT contract or subcontract must contain affirmative assurances that the contractor agrees to abide by DOT regulations in 49 C.F.R. Part 26 as a material condition of the contract.  49 C.F.R. § 26.13(b).  Specifically, each contract must include the following provision:

> The contractor, sub recipient or subcontractor shall not discriminate on the basis of race, color, national origin, or sex in the performance of this contract. The contractor shall carry out applicable requirements of 49 CFR part 26 in the award and administration of DOT-assisted contracts. Failure by the contractor to carry out these requirements is a material breach of this contract, which may result in the termination of this contract or such other remedy as the recipient deems appropriate.

*Id.*

35.     As discussed more specifically below, each contractor's compliance with federal regulatory requirements in 49 C.F.R. Part 26, including the standards for certifying eligibility as a DBE, is a material condition of payment under any contract awarded as part of the DBE program.

### B.     DBE Certification Requirements

36.     The criteria to be certified as a DBE are codified in 49 C.F.R. Part 26, and

include the following requirements, which are summarized on USDOT's website[2] as

follows:

> Ownership - Your business must be 51% owned by a socially and economically disadvantaged individual(s);
>
> "Disadvantaged" - You may be eligible if you are a member of a group of persons the Department considers as disadvantaged. The Department presumes certain groups are disadvantaged, including women, Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian-Pacific Americans, or other minorities found to be disadvantaged by the U.S. Small Business Administration (SBA). Persons who are not members of one of the above groups and own and control their business may also be eligible if they establish their "social" and "economic" disadvantage. The Department notes, for example, that people with disabilities have disproportionately low incomes and high rates of unemployment, and that many may be socially and economically disadvantaged. A determination of whether an individual with a disability meets DBE eligibility criteria is made on a case-by-case basis …
>
> Business Size Determination - A firm (including its affiliates) must be a small business as defined by SBA standards. It must not have annual gross receipts over $22,410,000 in the previous three fiscal years …
>
> Personal Net Worth - Only disadvantaged persons having a personal net worth (PNW) of less than $750,000 can be considered as a potential qualified DBE.  Items excluded from a person's net worth calculation include an individual's ownership interest in the applicant firm, and his or her equity in their primary residence …
>
> Independence - The business must not be tied to another firm in such a way as to compromise its independence and control.
>
> Control - A disadvantaged owner seeking certification must possess the power to direct or cause the direction of the management and policies of the firm. ….

37.  The DBE applicant must meet each and every one of these requirements

to be eligible for certification.

---

[2] *Available at* http://www.dotcr.ost.dot.gov/asp/dbe.asp.

38.     Further, if certification is granted, the certified DBE must continually verify that the business continues to meet the DBE eligibility criteria.

39.     Every DBE applicant must attest to the accuracy and truthfulness of the information on its application by either a notarized affidavit or by a declaration signed under penalty of perjury.  49 C.F.R. § 26.83(c)((7)(ii).

40.     The Affidavit of Certification form ("Affidavit") mandated by USDOT is prefaced by the following statement in bold print:

> **A MATERIAL OR FALSE STATEMENT OR OMISSION MADE IN CONNECTION WITH THIS APPLICATION IS SUFFICIENT CAUSE FOR DENIAL OF CERTIFICATION, REVOCATION OF A PRIOR APPROVAL, INITIATION OF SUSPENSION OR DEBARMENT PROCEEDINGS, AND MAY SUBJECT THE PERSON AND/OR ENTITY MAKING THE FALSE STATEMENT TO ANY AND ALL CIVIL AND CRIMINAL PENALTIES AVAILABLE PURSUANT TO APPLICABLE FEDERAL AND STATE LAW.**

The DBE applicant then swears to the truthfulness of the information in the application with the following statement, including that it provided all material information regarding the entity's eligibility for DBE status:

> I swear or affirm under penalty of law that … I have read and understood all of the questions in this application and that all of the foregoing information and statements submitted in this application and its attachments and supporting documents are true and correct to the best of my knowledge, and that all responses to the questions are full and complete, omitting no material information.  The responses include all material information necessary to fully and accurately identify and explain the operations, capabilities and pertinent history of the named firm as well as the ownership, control, and affiliations thereof.

41.     The Affidavit requires the DBE Applicant to specifically recognize that "the information submitted in [the] application is for the purpose of inducing certification approval by a government agency."

-11-

42.     The Affidavit requires the DBE Applicant to make ongoing reports to the "the prime contractor, if any, and the Department, recipient agency, or federal funding agency " of "current, complete and accurate information regarding (1) work performed on the project; (2) payments; and (3) proposed changes, if any, to the foregoing arrangements [in the Application]."

43.     Further, the DBE Applicant "agrees to provide written notice to the recipient agency or United Certification Program (UCP) of any material change in the information contained in the original application within 30 calendar days of such change (e.g., ownership, address, telephone number, etc.)." Federal regulation specify that this written notice be provided by sworn affidavit or declaration under penalty of perjury, and include supporting documentation, explaining any change in circumstances affecting its ability to meet the size, disadvantaged status, ownership, or control requirement of this part or any material change in the information provided in the application. 49 C.F. R. § 26.83(h)(1).

44.     The DBE Applicant specifically acknowledges that misrepresentations regarding its DBE status affects the decision to continue to contract with the entity and to maintain its certification status:

> I acknowledge and agree that any misrepresentations in this application or in records pertaining to a contract or subcontract will be grounds for terminating any contract or subcontract which may be awarded; denial or revocation of certification; suspension and debarment; and for initiating action under federal and/or state law concerning false statements, fraud or other applicable offenses.

45.    A certified DBE must annually sign a sworn affidavit or unsworn

declaration under penalty of perjury affirming that it continues to meet the DBE eligibility

criteria.  49 C.F.R. § 26(j).

46.    DBEs must again certify their compliance with the regulations regarding

eligibility when seeking payment for work performed.  For instance, in Ohio, a DBE must

certify that it is in compliance with the eligibility requirements set forth in 49 C.F.R. Part

26 by signing an Affidavit of Subcontractor Payment that specifically states that:

> By signing below, the noted firms agree that the payment amounts
> recorded above are true and accurate as of the payment time period notes
> above.  Furthermore, by signing, the noted firms attest to the fact that the
> DBE listed above has performed a "commercially useful function" and
> abided by all other requirements of the DBE Program as defined in Title
> 49 of the United States Code of Federal Regulations Part 26.

47.    Compliance with the certification and other requirements of the

DBE Program is a material condition of payment of DOT funds.

## V.    FACTS

### A.    Overview of the Fraud Scheme from 2002 to July 2009

48.    From approximately 2002 until July 2009, Defendants engaged in a fraud

scheme in which it obtained DOT contracts under the DBE Program by falsely

representing its DBE status; namely, they represented that TesTech was a bona fide

DBE firm owned and controlled by Sherif Aziz, when in fact, it did not meet several of

the eligibility requirements.

49.    In 1996, Defendants CESO, Inc. (specializing in engineering) and CESO

Testing Technology, Inc. (specializing in surveying) were awarded several contracts

-13-

from the commercial retailer Walmart to inspect land sites for the development of stores in various states.

50.     To prevent Walmart from viewing the Defendants as monopolizing contracted work or failing to prevent a conflict of interest by having their businesses perform both the engineering and surveying work, Shery and David Oakes began to refer to three or four employees of CESO Testing Technology, Inc. as "TesTech", which they called a "subcontractor".  Through this misrepresentation, Shery and David Oakes were able to keep all of the Walmart contract work within their businesses.

51.     In 1997, Shery and David Oakes decided to formally incorporate "TesTech."  During this time, Relator heard the Oakeses speak openly about their desire to obtain contracts and subcontracting work on state funded projects by being certified as a Minority Businesses Entity ("MBE") in Ohio,[3] as well as obtaining work on federally funded projects by being certified as a DBE.

52.     The Oakeses' solution was to appoint Sherif Aziz (who is married to Shery Oakes's sister-in law) as the President of TesTech and falsely name him as its owner in it application for MBE status in 1998 (which it received), then on its application for DBE status in around 2002.

53.     Based on the misrepresentations discussed more fully below, the Ohio DOT certified TesTech as a DBE, and TesTech began to bid on and receive subcontracting work from DOT federal fund recipients.

54.     As a result of TesTech's fraudulently obtained DBE status, TesTech

---

[3] MBE status in Ohio is governed by the Ohio Department of Administrative Services.

received federal funds for work on at least the following DOT-funded projects in Ohio:

- The Dayton International Airport;

- The Richenbacher Airport (Columbus International Airport);

- The Columbus Regional Airport Authority, Port Columbus Hangar Renovation Project;

- Findlay Airport, taxiway and runway rehabilitation;

- Highway construction at interchange I-70 and 1-75, north of Dayton;

- Highway construction on Interstate 675;

- Highway construction on U.S. Route 50 near Cleves; and

- Highway construction in Champagne County.

55.    In 2005, TesTech used its fraudulently-obtained DBE status in Ohio to get DBE status in Indiana, Kentucky, and Michigan, and has received subcontracting work on DOT funded projects in these states.

56.    The DOT funded projects in Indiana and Michigan include at least:

- The Fort Wayne International Airport, Indiana;

- The Detroit International Airport, Michigan;

- Roadwork on Indiana highways; and

- Roadwork on Michigan highways.

57.    Additionally, TesTech's illegally obtained DBE certification helped it to garner federally funded work with the United States Army Corp of Engineers in Louisville, Kentucky and Detroit, Michigan on deep tunnel drilling projects.

58.    The Defendants' scheme was ongoing from about approximately 2002 to

-15-

at least July 2009, when due to a federal investigation, Shery and David Oakes transferred ownership of TesTech to Aziz to conceal their fraud.

      59.    TesTech did not satisfy the DBE eligibility criteria during any part of this period.

      1.    **Sherif Aziz Did Not Own TesTech**

      60.    The DBE eligibility criteria require the disadvantaged owner to own at least 51% of the DBE firm. 49 C.F.R. § 26.69(b). Defendant Aziz never owned more than 10% of TesTech.

      61.    From the time TesTech was granted DBE status until July 2009, Shery and David Oakes were the owners of TesTech, owning between 85-90% of TesTech.[4]

      62.    The DBE eligibility criteria also require that the contributions of capital or expertise by the socially and economically disadvantaged owner to acquire his ownership interest be "real and substantial." 49 C.F. R. § 26.69(e). Aziz, however, did not contribute any capital to the formation of TesTech. Instead, Shery and David Oakes formed TesTech using their own capital to purchase the equipment and vehicles used in day-to-day fieldwork,[5] and to construct the building TesTech used as headquarters from 1997 to 2006. Shery and David Oakes, through their construction venture named

---

[4] At various points during his employment at TesTech, Shery and David Oakes told Relator that he had between a 1% and 5% ownership interest in TesTech, and that some of his bonus checks were based on this ownership interest. However, Relator was never provided with anything in writing that confirmed an ownership interest, and when Shery and David Oakes transferred TesTech to Aziz in July 2009, Relator did not receive any of the proceeds of the sale.

[5] Shery and David Oakes also had TesTech use equipment that had been purchased for their other companies which were incorporated before TesTech, to include at least CESO Testing Technology, Inc. which performed the same type of work as TesTech.

Yankee Partners, LLC contributed the majority of the money used to build new headquarters for their companies in 2006.

63.     Shery and David Oakes also gave Aziz his 10% ownership interest in TesTech, without any purchase agreement.  DBE regulations prohibit a DBE applicant from counting towards ownership any business interest "obtained by the individual as a result of a gift or transfer without adequate consideration, from any non-disadvantaged individual or non-DBE firm who is involved in the same firm for which the individual is seeking certification, or an affiliate of that firm."  49 C.F.R. § 26.69(g)(1)(ii).

64.     Aziz's "ownership" violates the requirement that ownership of a DBE by a socially and economically disadvantaged individual be:

> real, substantial, and continuing, going beyond pro forma ownership of the firm as reflected in ownership documents. The disadvantaged owners must enjoy the customary incidents of ownership, and share in the risks and profits commensurate with their ownership interests, as demonstrated by the substance, not merely the form, of arrangements.

49 C.F. R. § 26.69(c).

65.     The regulations state that the reviewer of the DBE applicant may "consider differences in remuneration between the socially and economically disadvantaged owners and other participants in the firm" in determining who actually controls the firm.  49 C.F.R. § 26.71(i).  Instead of sharing in the risks and profits of true ownership of TesTech, Defendant Aziz received a salary based on his position as the manager of the engineering department and laboratory.  By contrast, Shery and David Oakes were not paid a set salary.  Rather, they withdrew money from TesTech when they wanted, and without approval from Aziz.

-17-

66.     Incoming checks from work TesTech performed were directed to Tina Gunter, the accountant/controller for several of David and Shery Oakes's companies including TesTech. Ms. Gunter consulted Shery Oakes for direction regarding depositing or disbursing revenues.

67.     Relator regularly heard Shery Oakes direct Ms. Gunter to place TesTech's revenues into the accounts for other businesses owned by Shery and David Oakes. These revenues were never properly attributed to TesTech.

68.     David and Shery Oakes treated TesTech just like their other businesses, intermingling and freely transferring money among accounts without regard for proper accounting practices.[6]

69.     Upon information and belief, revenues earned by TesTech were placed into the accounts of the following companies owned by the Oakeses: CESO, Inc.; CESO Testing Technology, Inc.; CESO International, LLC; Design Homes & Development Co.; Design Properties, LLC; Design Properties, LTD; DHDC, Inc.; and Paradise Contractors (located in Nassau, Bahamas).

70.     David and Shery Oakes publically held themselves out to be the owners of TesTech, referring to themselves as such while speaking to clients and potential clients.

71.     David Oakes handed out business cards stating that he was the president of both TesTech and the CESO companies.

72.     In an article printed in the Dayton Business Journal, Shery Oakes referred to herself as the owner of TesTech, and stated that TesTech was part of "Oakes Cos."

---

[6] David and Shery Oakes incorporated several groups of companies using similar names, specifically to facilitate their ability to intermingle and transfer accounts.

73.    In a 2010 resume, Shery Oakes stated that from 2000-2009, she was the

Chief Executive Officer of TesTech, and described this position as:

> Founder/Co-Owner of TesTech, Inc. specializing in surveying,
> geotechnical and environmental engineering with offices located in Ohio
> and Michigan. Customers included Fortune 500 companies. Sold
> company in 2009 with revenues reaching $13,000,000 annually.

## 2.    Aziz Did Not Control TesTech's Day-to-Day Operations

74.    The United States DOT requires that the DBE owner control the day-to-

day business as well as determine its long-term management policies and practices. 49

C.F.R. § 26.71(d). In particular:

> The managerial role of the socially and economically disadvantaged
> owners in the firm's overall affairs must be such that the [DOT fund]
> recipient can reasonably conclude that the socially and economically
> disadvantaged owners actually exercise control over the firm's operations,
> management, and policy.

49 C.F.R. § 26.71(f).

75.    While a DBE owner "may delegate various areas of management, policy

making, or daily operations of the form to other participants, regardless of whether these

participants are socially and economically disadvantaged individuals," he or she must

retain authority to revoke such delegations, and must be able to "hire or fire any person

to whom such authority is delegated." 49 C.F.R. § 26.71(f).

76.    From when it was incorporated in 1997 until July 2009, David and Shery

Oakes controlled TesTech. Aziz was treated as an employee of, and at all times,

subordinate to the Oakeses.

77.    David and Shery Oakes, rather than Aziz, made decisions regarding how

to delegate management, policy making and daily operations. David and Shery Oakes

-19-

made all final decisions as to how TesTech was run on both a daily and long term basis.

78.    TesTech annually submitted a corporate filing of its yearly board meeting to the Ohio Secretary of State, stating that Defendant Aziz made decisions regarding TesTech's policies.  However, these meetings did not occur, and the minutes were fabricated by LaDonna Bell (Aziz's executive assistant) at the direction of Aziz and Tina Gunter.

79.    Employees of TesTech viewed David and Shery Oakes to be the owners of TesTech, while Aziz was viewed as a high level manager.

80.    Until July 2009, Aziz managed the geotechnical engineering department, which includes a laboratory. Aziz managed this department because this was the position that David and Shery Oakes placed him in.

81.    Aziz had no independent ability to make decisions on behalf of TesTech and he was unable to revoke David and Shery Oakes's corporate powers or to terminate them.

82.    Aziz was not routinely involved in or consulted regarding the hiring, promoting, or firing of employees.  David and Shery Oakes usually hired TesTech's managers, and Relator hired all other employees.  David and Shery Oakes made all decisions regarding terminations of employees.

83.    At times David and Shery Oakes merely notified Relator that a person had been hired or transferred from another one of their companies to work at TesTech.  For example, on May 10, 2005, Relator emailed Aziz that Shery Oakes had decided that her niece, Michelle Migally, would be working for TesTech  "again this year."  Aziz did not

want Migally to work at TesTech because he believed she had a poor work ethic, but was unable to override Shery Oakes' decision.

84.     Defendant Aziz did not typically participate in performance reviews for any of TesTech's employees.  Rather, David Oakes conducted the performance reviews for all high level managers including Aziz and Relator, and Relator did the reviews for all other employees.

85.     David and Shery Oakes determined whether management level employees received raises or bonuses.

86.     Defendant Aziz did not make decisions about raises for non-management employees.  Instead, the raises for all non-management employees of TesTech were determined at meetings involving all of the high level managers of various companies owned by Shery and David Oakes.

87.     David and Shery Oakes determined the administrative policies for all of their companies including TesTech.

88.     Until approximately 2001, CESO, Inc., CESO Testing Technology, Inc. and TesTech used the same employee handbook.  The handbook listed TesTech as part of "Oakes Companies", and stated that David Oakes was TesTech's president.  In 2001 David and Shery Oakes decided to have separate handbooks for the three companies.  However, the only changes made to the handbook were to place a separate cover page for TesTech on the handbook (which still carried the "Oakes Co." oak tree emblem), and to change the president of TesTech to Defendant Aziz.  Because the contents of the handbooks were exactly the same, when CESO Testing Technology,

-21-

Inc. ran out of employee handbooks in 2005 due to hiring a number of new employees,

Tina Gunter's solution was simply to replace the cover of the TesTech's handbook with

a CESO Testing Technology, Inc. cover.

89.     Shery and David Oakes set all of the managers' schedules, including

Defendant Aziz's hours.

90.     Shery and David Oakes required all their managers, including Defendant

Aziz to submit their vacation and time-off requires for their approval.

91.     TesTech managers including Defendant Aziz had to get direct approval

from either Shery or David Oakes to work overtime.  David Oakes personally created a

form for managers to request approval for overtime from him or Shery Oakes.

92.     David and Shery Oakes also determined which holidays TesTech

employees would have off work.  David and Shery Oakes decided that TesTech

employee would have the same holidays as the employees of all their other companies.

93.     Shery Oakes personally reviewed the time cards for all their companies

including TesTech, and she also approved TesTech's payroll.

94.     David Oakes directed Tina Gunter to create a policy memorandum to

outline timesheet compliance for both CESO Testing Technology, Inc. and TesTech.

95.     Shery Oakes made the decisions regarding disbursement of TesTech's

revenues, including whether revenues would be attributed to TesTech or would be

placed into the accounts of her and David Oakes's other companies.

96.     All withdrawals from TesTech's account had to be approved by Shery

Oakes.  For example, in a June 7, 2005 email from Relator to Aziz, Relator states that

Shery Oakes had given permission to write an employee a check for $250.00 as a wedding gift from TesTech.

97.     By way of another example, in 2005, one of TesTech's Vice Presidents, Larry Holland, retired. TesTech planned to hold a retirement party for Mr. Holland and on April 18, 2005, Deena Turnbull, an employee of TesTech, emailed Aziz asking whether she should go to Shery or David Oakes as well as Tina Gunter for approval of a budget for the event.

98.     All decisions concerning legal matters were made solely by the David and Shery Oakes.

99.     David and Shery Oakes determined the contracts on which TesTech would bid. While Aziz typically submitted financial figures to David and Shery Oakes regarding bids, it was the Oakeses who made the final decisions about which jobs to bid on and in what amounts.

100.    Shery Oakes negotiated and made most of the decisions regarding the purchase of equipment that TesTech used in day to day operations to include trucks, construction and surveying equipment, without Aziz's involvement or consent. The equipment and vehicles were regularly used by other companies owned by the Oakeses.

101.    While 49 C.F.R. § 26.71(m) states that the DBE firm is supposed to own the equipment used to perform its work, until July 2009, many of the tools, equipment and vehicles TesTech used were owned or licensed to David Oakes, and titled to either David Oakes or CESO Testing Technology, Inc.

-23-

102.   TesTech regularly used a Nuclear Density Gauge in its DOT contract work.  The federal license for the gauge, obtained from the Nuclear Regulatory Commission, was licensed to David Oakes under CESO Testing Technology, Inc. until July 2009.

103.   Similarly, the drill rigs TesTech used in its daily work were licensed to David Oakes until July 2009.

104.   The vehicles that employees used to travel to and from work sites were also shared among the employees of TesTech, and at least CESO, Inc. and CESO Testing Technology, Inc. Relator, along with administrative staff who worked for other companies owned by the Oakeses, created a protocol for signing out and tracking vehicles.

### 3.   TesTech Lacked Independence

105.   The regulations concerning DBE eligibility require the disadvantaged business to be "independent," meaning it is viable without depending on relationship with other firms.  49 C.F.R. § 263.71(b).

106.   TesTech was not made an independent corporate entity of Shery and Davis Oakes's companies until July 2009, after Defendants were contacted by investigators from DOT's Office of the Inspector General ("DOTIG") investigators (*see* ¶ 143).

107.   TesTech's facilities, equipment, personnel, accounts and payments to employees, were thoroughly integrated and dependent on Shery and David Oakes's other companies, in contradiction to the DBE criteria at 49 C.F.R. § 263.71(b)(1) which

-24-

states:

> In determining whether a potential DBE is an independent business, you must scrutinize relationships with non-DBE firms, in such areas as personnel, facilities, equipment, financial and/or bonding support, and other resources.

108.   Since its incorporation, TesTech's main headquarters have been located in the same building as several of Shery and David Oakes's companies, including at least CESO, Inc., CESO Testing Technology, Inc., DHDC, Inc. and the housing development companies referred to as "Design Homes."

109.   From 1997-2006, headquarters were located on Lyons Drive in Dayton, Ohio, in a building built and owned by David and Shery Oakes. David and Shery Oakes financed and built the new headquarters in 2006 located at 8534 Yankee Street, Dayton, Ohio 45458. TesTech moved its main office headquarters there, where they currently remain.

110.   TesTech and the other businesses located on Yankee Street shared the reception area as well as meeting rooms.

111.   Likewise, all of the businesses at the Yankee street headquarters shared computers, a single software license,[7] phone lines, and office supplies such as copiers and paper.

112.   Until 2006, all emails to TesTech employees were first sent to a CESO, Testing Technology email address and were then forwarded onto the recipient.

113.   The phone accounts for all of the companies headquartered on Yankee

---

[7] In 2009, the Shery and David Oakes were sued by Microsoft for infringing the usage license for sharing software with TesTech. They eventually settled with Microsoft.

Street were on one Nextel account.

114.    TesTech also shared the equipment, tools, and vehicles it uses on a day to day basis with David and Shery Oakes's other companies, many who performed similar work.

115.    Many employees who were officially employees of CESO, Inc.; CESO Testing Technology, Inc.; DHDC, Inc.; and Design Homes, performed work for TesTech on a regular basis and vice versa.

116.    Larry King, who was officially the head Geotechnical Engineer at TesTech regularly worked on CESO, Inc.; CESO Testing Technology, Inc. and CESO International, LLC projects.

117.    Tina Gunter was officially the head accountant and controller for CESO, Inc., but did accounting and billing for TesTech, as well as hired office staff for TesTech.

118.    Scott Davis was officially the head of the Information Technology department for CESO, Inc. but did all of the internet- and computer-related tasks for all of the companies located at the Yankee Street headquarters, including TesTech.

119.    Many surveyors and engineers, who officially worked for one company owned by the Oakeses, regularly worked on projects for different Oakeses' companies, including TesTech.

120.    Relator regularly performed subdivision development work and office administrative tasks for Shery and David Oakes's other companies and development ventures.  Relator regularly hired employees for these other companies.

121.    CESO, Inc., CESO Testing Technology, Inc, and TesTech were so highly

-26-

integrated that the accounting for the operating expenses and payroll for all three companies were recorded on common ledgers.

122.  Money was regularly pulled from the accounts of CESO, Inc., CESO Testing Technology, Inc, and TesTech to cover "shared" costs.  For instance, on accounting documents from January through February 2009, wages to engineers were "split," meaning that their pay was drawn from all three accounts because the engineers had performed work for all three businesses.

123.  All Defendants knew that TesTech was not independent from the other companies owned by Shery and David Oakes and knowingly hid this from the Ohio DOT and from the Ohio Department of Administrative Services which runs the state's Minority Business Enterprise (MBE) program.  In 2005, the Ohio Department of Administrative Services visited the Yankee Street headquarters as part of the MBE re-certification process.[8]  Aziz directed his executive secretary, Ladonna Bell, to send out the following message, warning Relator and Tina Gunter not to reveal TesTech's true relationship to Shery and David Oakes's other companies:

> Sherif wants all management personnel to be aware of their visits & prepare accordingly ... [MBE] will be looking for verification of TesTech individual operations & separation of company operations/identify is of vital importance.  We do not want to appear to be a division of CESO or Design Homes or represented that way.

### 4.    TesTech Did Not Qualify as a Small Business Entity

124.  For a business to qualify as a DBE, it must be a "Small Business Entity".

---

[8] Like the DBE program, the Ohio MBE program requires that the business be "independent".

A Small Business Entity is one that has not generated annual gross receipts[9] over $22,410,000 in the previous three fiscal years. 49 C.F.R. § 26.65(b).

125. From 2005 to 2009, TesTech generated revenues of approximately $13-15 million per year.

126. Much of TesTech's revenues however, were not recognized by TesTech because Shery Oakes directed revenues to be placed into the accounts of her other companies and also used them to fund her and her husband's various development ventures.

127. Shery and David Oakes told Relator and Aziz multiple times from 2003 to

---

[9] Annual Gross Receipts are defined as:

(a) *Receipts* means "total income" (or in the case of a sole proprietorship, "gross income") plus "cost of goods sold" as these terms are defined and reported on Internal Revenue Service (IRS) tax return forms (such as Form 1120 for corporations; Form 1120S and Schedule K for S corporations; Form 1120, Form 1065 or Form 1040 for LLCs; Form 1065 and Schedule K for partnerships; Form 1040, Schedule F for farms; Form 1040, Schedule C for other sole proprietorships). Receipts do not include net capital gains or losses; taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. For size determination purposes, the only exclusions from receipts are those specifically provided for in this paragraph. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, and employee-based costs such as payroll taxes, may not be excluded from receipts.

49 C.F.R. § 26.65(b), *quoting* 13 C.F.R. §121.104.

2005 that their semi-annual bonuses were reduced because TesTech's revenues had been used to fund CESO International, LLC, their company that builds casinos and luxury homes in the Bahamas.

128.    Shery and David Oakes knowingly diverted TesTech's revenues into their other companies to make it appear that TesTech revenues were below the DBE eligibility criteria limit.

### 5.    Aziz's Personal Worth is Over the DBE Eligibility Limit

129.    The DBE eligibility requirements limit the owners' personal net worth to less than $750,000, after excluding the owner's individual's ownership interest in the applicant firm, and equity in his or her primary residence.  49 C.F.R. § 26.67(2)

130.    Upon information and belief, Aziz's personal net worth was at all times relevant to the fraud more than $750,000.

131.    Shery Oakes informed Relator many times that Aziz's net worth was approximately $5 million, explaining to him that Aziz has partnerships and investments in various land development and construction projects owned by Shery and David Oakes.

132.    These projects include at least the following ventures:

- Partnership Design Properties;

- Design Properties, LLC;

- Yankee Partners, LLC;[10]

_____

[10] This venture financed the constructed the building where TesTech's current headquarters are on Yankee street.   Aziz has a 5% to 10% ownership interest in this venture.

- Lalique Partners, LLC ;

- Cypress Ridge, LLC.

133.    Aziz is also a partner in a foreign company called XYZ Corporation which ships and distributes Evenflo infant products in the Middle East and Northern Africa.

134.    Relator often witnessed Aziz make phone calls and write emails related to these other business ventures while at TesTech's headquarters.

135.    The DBE eligibility requirements instruct that when calculating the amount to exclude due to the owner's equity in his or her primary residence, any portion of such equity that is attributable to excessive withdraws from the applicant's firm cannot be excluded.  49 C.F.R. § 26.67(a)((2)(iii)(B).

136.    In 2005, Aziz built a house located at 10051 Beaufort Run, Centerville Ohio.[11]  This property is listed on the Montgomery County, Ohio Auditor's webpage as having a taxable value of $704, 470.  Upon information and belief, Aziz charged much of the cost of constructing this home to TesTech's credit cards.  Aziz did so because the Shery and David Oakes instructed their high level managers that in lieu of receiving a traditional bonus check, they could charge the cost of home improvements or the cost of building a home to company credit cards.  Shery and David Oakes would then write off the credit card charges as business expenses without paying taxes on them, and the recipients of the credit card "bonuses" did not have to claim the bonus as income on their taxes.  Such "bonuses" amounted to tens of thousands of dollars to hundreds of

---

[11] Aziz purchased the land on which the house is built from Shery David Oakes, LTD.

thousands of dollars, per manager, each year.[12]

## B.  Relator's Discovery of Defendants' Fraud Scheme

137.  Relator's day-to-day duties as TesTech's Vice President and Director of Operations included supervising staff performance at job sites, placing employees on projects, hirings, firings, and performance of evaluations for all non-management employees, as well as administration tasks.

138.  As Corporate Secretary, Relator signed paperwork for credit financing, Workman Compensation paperwork, and corporate filing documents.

139.  TesTech performed most of its government-funded jobs as a subcontractor. For DOT project, the primary contractors usually required that TesTech fax or send its certification of DBE status and sign off on paperwork certifying its compliance with the DBE requirements.  Relator witnessed Aziz sign paperwork certifying that TesTech was a bona fide DBE.

140.  Relator also witnessed Aziz sign DOT affidavits for payment which require the DBE to attest to meeting the DBE eligibility requirements.

141.  Until the fall of 2008, Relator did not know about the DBE application criteria and regulatory requirements, and did not suspect that Defendants were engaged in a fraud scheme.

142.  Around September 2008, Relator was asked to attend a meeting with Aziz and a man he did not recognize.  Relator was asked a series of questions regarding

---

[12] In 2006, Relator earned $66,000 for the first half of 2006, which he accepted as a traditional bonus check.  Relator believes other managers were given at least this much and sometimes more.

Aziz's title and position at TesTech. Relator answered truthfully stating Aziz's duties and said that his title was President of TesTech.[13]

143.    After the meeting Aziz stated to Relator: "You did a good job. You answered everything the way you should have." Relator was puzzled by this statement and asked Aziz who the man was and why he had been questioned. Aziz explained that the man was an agent from DOTIG and that he was investigating TesTech's DBE eligibility because Shery Oakes had stated in a newspaper article that she was TesTech's owner.

144.    Approximately January 2009, Shery and David Oakes directed Aziz to withdraw TesTech's DBE status in Ohio in order to cover up their fraud.

145.    During the summer of 2009, David and Shery Oakes sold their ownership interest in TesTech to Aziz for the grossly undervalued price of $3 million.[14]

146.    Shery and David Oakes sold Aziz field equipment (such as a nuclear density gage, drill rigs, and vehicles) and office equipment (such as computers and licenses to software programs, copiers, and fax machines) to Aziz for below market value.

147.    Shery and David Oakes created the appearance that they had sold the

_____

[13] The man did not ask him anything about the Shery and David Oakes's ownership of or involvement with TesTech.

[14] About a year prior to the sale, David and Shery Oakes had discussed with Relator and Aziz selling TesTech (under the name of CESO Testing Technology, Inc.) for $15 million to Brady Ware, and were negotiating for Aziz and Relator to continue on with TesTech after the sale. BradyWare (aka Brady, Ware & Shoenfeld, Inc.) is a Certified Public Accounting and Consulting firm, which specializes in business acquisitions and mergers.

assets of CESO Testing Technology, Inc. to Aziz, while they really sold Aziz ownership of TesTech.[15]

148.    These events raised Relator's suspicions.  He researched the regulations governing DBE eligibility, and discovered that Defendants' were acting illegally.

### C.    Retaliation Against Relator

149.    By July of 2009, as a result of Shery and David Oakes's attempts to disengage with TesTech in reaction to contacts by DOTIG, Aziz had taken over managing all of TesTech's daily affairs.

150.    In September of 2009, Aziz approached Relator and told him that he wanted to re-apply for DBE status.  Relator believed from his regulatory research that even though Shery and David Oakes were no longer involved in TesTech's daily business, Aziz still did not meet DBE eligibility requirements.

151.    In or around the middle of September, 2009, Relator told Aziz that he did not think they could legally gain DBE status, and that he would not sign off on the DBE application.  Within two weeks, Aziz demoted Relator to a division manager.  On October 3, 2009, Relator was terminated.  Aziz told him that he was being "laid off" because he was not bringing in enough clients to cover his costs as a manager.  Relator had previously received consistently high performance reviews.  Relator was quickly replaced.

152.    After he was terminated from TesTech, Relator spoke with the Shery Oakes, who hired him to manage DHDC, Inc. a company that provided essentially the

---

[15]    Shery and David Oakes informed former customers that they had sold TesTech, since their clients regarded them as TesTech's owners.

same services as TesTech. He accepted the position in October of 2009. The position

pays half the salary he was making at TesTech.

153. Shortly after starting at DHDC, Inc., Relator contacted the DOTIG

investigator that had previously interviewed him and disclosed the information herein.

Relator has since assisted the government in their ongoing investigation of the

Defendants.

154. In the months following their sale of TesTech to Aziz, Shery and David

Oakes made numerous admissions that they were the owners of TesTech until July

2009.

155. For instance, on January 18, 2010, Shery Oakes wrote to Greg Horn, who

works for the city of Centerville, stating:

> I wanted to make you aware of a couple of items that you referred to in
> your letter. DHDC, Inc. is a new division of my company due to the
> separation of CESO and the sale of TesTech, Inc., DHDC as [sic] a stand
> along MBE/WBE Surveying and Engineering Firm would like to be placed
> on your list of companies to receive RFP/RFQ's in the future.
>
> I understand where the previous "common" relationships
> between the companies may have caused some confusion; however,
> going forward I would appreciate if you would add DHDC, Inc. as a
> separate company on any RFP/RFQ list.

156. On March 25, 2010 Shery Oakes had her assistant email Relator to set

up a meeting with administrative staff for the City of Centerville, to "clear up the

misconception that TesTech is still owned by Shery,"

157. David Oakes likewise admitted his previous ownership of TesTech in May

of 2010. The issue of ownership came up after TesTech failed to complete a job, and

the client approached the Oakeses to finish the work. Aaron Matson, an employee of

CESO, Inc. wrote to Relator on David Oakes behalf that:

> David just came to see me and he agrees that this is not a DHDC contractual obligation. However, since it was supposed to be completed when TT was owned by him, he feels that is an Oakes responsibility to see it through. He feels since the Oakes have charged and collected a fair price to complete the work ... he thinks that it is fair to finish the job for [the client].

### D.   Ongoing Fraud By the Defendants

#### 1.   Aziz's Continued Fraud

158.   Aziz has continued to present TesTech as a bona fide DBE, although it still does not meet the eligibility criteria. In particular, Aziz continues to invest in business ventures with the Shery and David Oakes, and XYZ Corporation that put him over DBE eligibility limit for personal net worth.

159.   Moreover, Aziz's ownership of TesTech (under the guise of the sale of CESO Testing Technology, Inc.) was purchased for far below fair market value in violation of 49 C.F.R. § 26.69(g)(1), which specifically instructs the DBE applicant reviewer to:

> presume as not being held by a socially and economically disadvantaged individual, for purposes of determining ownership, all interests in a business or other assets obtained by the individual as the result of a gift, or transfer without adequate consideration, from any non-disadvantaged individual or non-DBE firm who is –
>
> (i)    Involved in the same firm for which the individual is seeking certification, or an affiliate of that firm;
>
> (ii)   Involved in the same or a similar line of business; or
>
> (iii)  Engaged in an ongoing business relationship with the firm, or an affiliate of the firm, for which the individual is seeking certification.[16]

---

[16] Section § 26.69(g)(1) provides that:

160.   TesTech is currently listed as a DBE with Kentucky's Transportation Cabinet, Department of Highways, and the Government Vendor Directory at USAGOV.net.

161.   Relator has learned that TesTech continues to perform work as a DBE on federally funded projects for the Columbus Regional Airport, based on its original fraudulent certification.

162.   Relator has also learned that TesTech has successfully applied for status as a Minority 8(a) Small Business by the United States Small Business Administration. Minority 8(a) status allows a business special preference for federally funded work.  The SBA regulations (3 C.F.R. Parts 121 and 124) cap personal worth at $250,000 which Aziz far exceeds.  13 C.F.R. § 124.104(c)(2).  TesTech has successfully garnered work with the Army Corp of Engineers in Ohio, Indiana, Michigan, Kentucky through this fraud.

### 2.   Shery Oakes's Continued Fraud

163.   Shery Oakes has conspired to help at least two minority-owned

---

 To overcome this presumption and permit the interests or assets to be counted, the disadvantaged individual must demonstrate to you, by clear and convincing evidence, that –

    (i)    The gift or transfer to the disadvantaged individual was made for reasons other than obtaining certification as a DBE; and

    (ii)    The disadvantaged individual actually controls the management, policy, and operations of the firm, notwithstanding the continuing participation of a non-disadvantaged individual who provided the gift or transfer.

businesses obtain DBE certification through false representations regarding their eligibility so that DHDC, Inc. can access lucrative government funded contracts again.

164.    Shery Oakes has provided funding and other support to a landscaping business called Branch, LLC (a.k.a. "Branch Consulting") owned by an African American man named Donny Branch.  Shery Oakes instructed Mr. Branch to falsely state in his DBE application that he had expertise to perform such work.

165.    Shery Oakes conspired with Mr. Branch to misrepresent to prime contractors that DHDC, Inc. will use Branch, LLC to perform part of the contract work. In reality, DHDC, Inc. is performing the vast majority of the work Branch, LLC is supposed to be doing, and retaining 75% of the payments it reports to the prime contractor as having paid to Branch, LLC for its work.

166.    Shery Oakes used this scheme to obtain work from the Ohio DOT on a roadwork project on Indian Ripple Road in Dayton.

167.    Similarly, Shery Oakes has provided funding and other support to a business called Start 2 Finish Excavating, Inc., owned by a woman named Julia Frazee. Mrs. Oakes instructed Mrs. Frazee to falsely state in her DBE application that she that her employees have the expertise to do surveying work, which they do not.

168.    Shery Oakes has conspired with Mrs. Frazee to misrepresent to prime contractors that DHDC, Inc. will use Start 2 Finish Excavating, Inc. to perform part of the contract work.  In reality, DHDC, Inc.  is performing the vast majority of the work is supposed to be doing, and retaining 75% of the payments it reports to the prime contractor as having paid Start 2 Finish Excavating, Inc. for its work.

-37-

169.   Shery Oakes used this scheme with to obtain work from the Ohio DOT on highway construction projects.

## COUNT I
## VIOLATIONS OF THE FALSE CLAIM ACT, 31 U.S.C. § 3729(a)(1)(A)

170.   The allegations of the above paragraphs are incorporated as if fully alleged herein.

171.   Defendants falsely certified their eligibility for DBE status and then falsified their ongoing compliance with the certification and eligibility requirements with the DBE program.  By so doing, Defendants falsely obtained contracts for DOT funds in violation of known conditions of payment.

172.   As such, each time a claim for payment was submitted under every contract and subcontract obtained by Defendants in the DBE Program, they knowingly presented or caused to be presented, false or fraudulent claims for payment or approval to the United States for work for DOT funded project recipients and Army Corp of Engineer project recipients, in violation of 31 U.S.C. § 3729(a)(1)(A).

173.   Defendants' actions in presenting or causing to be presented false claims for payment for subcontracting work obtained under the false pretenses that TesTech was a bona fide DBE were done knowingly as that term is defined by the False Claims Act, 31 U.S.C. § 3729(b)(1)(A)(i-iii), and § 3729(b)(1)(B).

174.   By virtue of the false or fraudulent claims presented or caused to be presented by the Defendants, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

-38-

## COUNT II
## VIOLATIONS OF THE FALSE CLAIM ACT, 31 U.S.C. § 3729(a)(1)(B)

175.    The allegations of the above paragraphs are incorporated as if fully alleged herein.

176.    Defendants created myriad false records and statements, including false corporate filings, false DBE Applications, false Affidavits certifying the truthfulness of those Applications, false Affidavits certifying ongoing compliance with DBE Program requirements, false assurances in contracts and subcontracts that it would comply with these requirements, and false statements on claims for payment.

177.    Each of these records and statements are material to DOT's decision to pay Defendants under every contract and subcontract obtained as a DBE.

178.    These false records and statements materially affected TesTech's right to be certified as a DBE, to obtain work as a DBE, and to claim and receive payments from federally fund recipients as a DBE.

179.    As such, Defendants knowingly made, used or caused to be made or used, material false records and statements to get false or fraudulent claims paid in violation of 31 U.S.C. § 3729(a)(1)(B).

180.    Defendants' actions in creating and using, or causing to be made or used, false or fraudulent documents were done knowingly as that term is defined by the False Claims Act, 31 U.S.C. § 3729(b)(1)(A)(i-iii), and § 3729(b)(1)(B).

181.    By virtue of the material false records and statements that the Defendants made, used or caused to be made and used, the United States has suffered damages

-39-

and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT III
## VIOLATIONS OF THE FALSE CLAIM ACT, 31 U.S.C. § 3729(a)(1)(C)

182. The allegations of the above paragraphs are incorporated as if fully alleged herein.

183. The individually named defendants—Shery Oakes, David Oakes, and Sheriff Aziz—reached an agreement and acted in concert to initiate and engage in a scheme to create false records and statements to falsely obtain false DBE status, be awarded contracts and subcontracts under the DBE Program, and to present false claims for payment to federally-funded recipients.

184. Defendants knowingly conspired to commit violations of 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).

185. By virtue of this conspiracy, the United States has suffered damages and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

## COUNT IV
## VIOLATION OF THE FALSE CLAIMS ACT'S PROHIBITION AGAINST RETALIATION, 31 U.S.C. § 3730(h)

186. The allegations of the above paragraphs are incorporated as if fully alleged herein.

187. Relator Ryan Parker was transferred to work for Defendant business TesTech Inc. in 2005.

-40-

188.    Relator acted as the Director of Operations and by virtue of his position, knew of the business relationship between Shery and David Oakes and Sherif Aziz, and had information about the operation of both TesTech and many other companies owned by Shery and David Oakes.

189.    During the fall of 2009, Relator became aware of the schemes alleged above and objected to Aziz regarding these practices.

190.    As a direct result of his objecting to and refusing to participate in illegal activities, Relator was demoted then terminated in October of 2009 in violation of 31 U.S.C. § 3730(h).

191.    The sole reason for Relator's firing was in relation to lawful acts of the Relator in furtherance under the False Claims Act.

192.    As a result of defendants' actions Relator had to accept a lower salary.

193.    Relator has been harm and is entitled to all relief necessary to be made whole.

**WHEREFORE**, Relator Ryan Parker on behalf of himself and the United States of America, prays:

A.    That the Court enter judgment against the defendants, jointly and severally, in amount equal to three times the amount of damages the United States Government sustained because of their actions, plus a civil penalty of $11,000.00 for each false claim;

B.    That Relator be awarded 25% of the proceeds of this action if the United States elects to intervene, and 30% of the proceeds if it does not;

C.   That his attorney fees, expenses, and costs be paid by defendants; and

D.   That the United States and Relator receive all legal and equitable relief to

which they may appear entitled.

Respectfully submitted,

Frederick M. Morgan Jr. (0027687)
Jennifer M. Verkamp (0067198)
Lucia Shary (0081979)
Morgan Verkamp, LLC
700 Walnut Street, Suite 400
Cincinnati, OH 45202-2015
Tel (513) 651-4400
Fax (513) 651-4405
e-mail: rmorgan@morganverkamp.com
        jverkamp@morganverkamp.com
        lshary@morganverkamp.com